19 F.3d 27
 1994 Copr.L.Dec. P 27,231
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gyorgy FODOR, Plaintiff-Appellant,
v.
TIME WARNER, INC.; Warner Communications Co.; Warner Books
Inc.; Dennis Anderson; Warner Bros., Inc.,
Defendants-Appellees.
 Nos. 92-56169, 92-56454.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 2, 1994.
Decided March 2, 1994.
 
 Before: TANG, PREGERSON, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Gyorgy Fodor filed a copyright action contending that defendants Dennis Anderson, Warner Books, Inc., Warner Bros. Inc., Time Warner Inc., and Warner Communications Inc. (collectively, "Warner"), infringed his copyright in a screenplay entitled Stealth by writing and publishing the book Target Stealth. The district court granted summary judgment for Warner after finding that Target Stealth was a prior independent creation. The district court also granted substantial attorney's fees to Warner for Fodor's bad faith denial of the authenticity of documents proving prior independent creation. Fodor appeals both the summary judgment and the award of attorney's fees.
 
 BACKGROUND
 
 3
 Gyorgy Fodor wrote a screenplay about the Stealth bomber entitled Stealth. The screenplay was copyrighted on October 17, 1987. On February 22, 1988, Fodor submitted the screenplay to Wayne Duband, President of Warner Bros., with whom he had previously done business. It is undisputed that Warner did not have access to the screenplay prior to this date. Warner apparently did not respond to the submission, and Fodor's attempts to finance the project elsewhere were unsuccessful due to the recent publication of the book Target Stealth, which appeared to be the novelization of Fodor's screenplay.
 
 
 4
 Fodor filed his copyright infringement action in May 1990. Warner's first motion for summary judgment was denied on the basis that there was a genuine issue of material fact whether the screenplay Stealth and the book Target Stealth were substantially similar. While the district court recognized that Warner contended that it had no access to the screenplay until the book was already written, the court did not resolve this issue.
 
 
 5
 Warner thus moved for reconsideration of the denial of summary judgment, urging the district court to consider the prior independent creation issue. Warner presented evidence that Dennis Anderson wrote Target Stealth in 1986, and in January and February 1987, submitted the manuscript to James O'Shea Wade at Crown Publishers, Patricia Soliman at Simon and Schuster, and Nansey Neiman at Warner Books. On February 24, 1987, Warner agreed to publish the book and prepared a "Contract Deal Memo" in which Anderson would be paid a $150,000 advance (one-half upon signing the contract and one-half upon delivery and acceptance of the revised manuscript). When a contract was signed in late April 1987, Anderson's agent received a $75,000 check, who then sent Anderson a check on April 27, 1987 in the amount of $63,714.63 (after deducting the agent's expenses and commission). Another check for $75,000, minus expenses and commission, was sent to Anderson on January 14, 1988.
 
 
 6
 Thereafter, Anderson's manuscript was edited by Charles Conrad at Warner Books. In response, Anderson twice revised his manuscript and sent revisions to Conrad on August 17, 1987 and October 27, 1987, after which Warner contends the book was essentially complete. The editing process continued into 1988, and Target Stealth was typeset and page proofs printed in May 1988. The hardcover version was published in February, 1989.
 
 DISCUSSION
 I.
 
 7
 "To establish infringement, two elements must be proven: (1) ownership of a valid copyright,[1] and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S.Ct. 1282, 1296 (1991) (citation omitted). Because there is rarely direct evidence of copying, a finding of copying "typically depends on proof of access and probative similarity." Nimmer on Copyright, Sec. 13.01B, at 13-13 (1993). Even if two works are substantially similar, however, there is no infringement liability if the challenged work was independently created. Id.
 
 
 8
 It is undisputed that Warner had access to Fodor's screenplay in February, 1988. Fodor raises a number of issues which he claims create a genuine issue of material fact regarding whether Target Stealth was in fact created prior to Warner's access to his screenplay.
 
 
 9
 Fodor first argues that common errors in the two works establish a prima facie case of copying. See Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc., 777 F.2d 485, 492 (9th Cir.1985) ("courts have regarded the existence of common errors ... as the strongest evidence of piracy, but proof of common errors does not obviate the need for proving substantial similarity."); Nimmer, Sec. 13-01[B], at 13-13--13-13. However, if Warner did not have access to the screenplay prior to the writing of Target Stealth, even striking similarities between the two works must be deemed fortuitous. See Feist, 111 S.Ct. at 1287 ("a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.")
 
 
 10
 Fodor next argues that Target Stealth was not created prior to his screenplay because its copyright registration form, dated February 7, 1989, states that "creation ... was completed" in 1988. The Copyright Office Form TX, which provides instructions on completing the copyright registration form, explains what the form means by "creation" under the statute:
 
 
 11
 [A] work is "created" when it is fixed in a copy or phonorecord for the first time. Where a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.
 
 
 12
 Nimmer, Sec. 21.02, at 21-6 (emphasis added). The version of Target Stealth for which Anderson sought registration was completed in 1988, and the copyright registration date is consistent with Warner's other evidence.
 
 
 13
 Fodor additionally argues that Dennis Anderson gave a statement to the press that he received the premise for his book in November 1988. However, there is no evidence that Anderson manifested his agreement with the article, and it therefore does not qualify as a party-opponent admission under Fed.R.Evid. 801(d)(2). The article is otherwise inadmissible hearsay.
 
 
 14
 Fodor next turns to Anderson's alleged admission at deposition that he relied on 1988 reference material in preparing his manuscript. This deposition testimony, alone, does not raise an issue of material fact. The deposition testimony reveals that the reference book had an original copyright date of 1975; it was not clarified in the deposition whether Anderson used only the 1988 version or had possessed the 1975 version as well. Further, the 1988 "completion" date on the copyright registration is consistent with Anderson's testimony that he used the 1988 version for reference.
 
 
 15
 Fodor also challenged the authenticity of certain banking documents produced by Warner to establish that Anderson had been paid for Target Stealth prior to the date of access to Fodor's screenplay. However, Fodor stipulated to the admission of these documents, and agreed that he would not challenge their authenticity. Although Fodor argues that the stipulation was entered into "for the convenience of counsel" to allow Morgan Guarantee documents to be admitted without the testimony of a custodian of records, the stipulation is clearly not so limited in scope.
 
 
 16
 More importantly, while there may have been some grounds on which to challenge the authenticity of these documents,[2] Warner produced other, unchallenged, documents establishing prior independent creation, including the "Request for Payment" for the first installment of the advance, dated April 16, 1987, tax documentation reflecting the April transaction, and contracts and agreements memorializing the negotiations and revisions of the book. The inconsistencies in the banking documents, produced directly by the banks, are better explained by mistakes made by the banks. In view of the other unchallenged evidence introduced by Warner, these inconsistencies, alone, do not defeat summary judgment.
 
 
 17
 Warner also introduced affidavits from other publishers stating that they had reviewed Target Stealth in 1987. Fodor argues that this testimony should be discounted because the witnesses were interested parties. This argument was not raised in the district court, and will not be considered by this court.
 
 
 18
 Moreover, Fodor's argument that the testimony of Wayne Duband and Dennis Anderson produce a "consistent pattern of perjury," is not supported by the record. Although credibility determinations and the drawing of inferences are for the jury, Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986), the substance of the testimony and the extensive documentary evidence was otherwise undisputed by Fodor. Fodor cannot create an issue of material fact merely by casting aspersions on the declarants.
 
 
 19
 Rule 56(e) provides that a party opposing a motion for summary judgment may not rest upon the allegations or denials in the pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." A court "must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).
 
 
 20
 In granting summary judgment for Warner, the district court held that "undisputed and overwhelming" evidence supported the independent creation of Target Stealth. Fodor has not introduced facts which contradict the substantial evidence introduced by Warner to establish prior independent creation. The district court's summary judgment is affirmed.[3]
 
 II.
 
 21
 As there is no issue of material fact that Duband had access to Fodor's screenplay prior to the writing and essential completion of Target Stealth, there is no basis on which to find that Duband violated a confidential relationship with Fodor nor that Warner engaged in unfair competition. The district court's dismissal of Fodor's state law claims is affirmed.
 
 III.
 
 22
 Fodor urges this court to reverse alleged unsigned orders, citing Daniels v. Stover, 660 F.Supp. 301, 303-04 (S.D.Tex.1987), in which the district court held that a state judge was not shielded in a Sec. 1983 case by judicial immunity where the challenged acts (mental health warrants) were rubber stamped by a clerk outside of the presence of the judge, and Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F.Supp. 1190, 1224 (E.D.Pa.1980), which holds that a signature affixed by rubber stamp which corresponds to usual practice may authenticate a document. Neither case helps Fodor. Fodor provided no evidence that the district court orders are not authentic. This claim is rejected.
 
 IV.
 
 23
 Warner served Requests for Admission, requesting Fodor to admit the truth of certain facts and the authenticity of documents which established that Target Stealth was written in 1986 and sold to Warner in 1987. Fodor denied the authenticity of all the documents offered by Warner, on the basis that the alleged non-authentic documents raised an issue that all of the documents had been altered or manufactured.
 
 
 24
 The district court found that Fodor had denied Warner's requests in bad faith in violation of Fed.R.Civ.P. 37(c), and ordered Fodor to pay Warner $169,587.50 in attorney's fees for Warner's "costs of proving the truth of the facts and genuineness of documents pursuant to Fed.R.Civ.P. 37(c)." [ER 19-20.] The district court's award of attorney's fees is reviewed for an abuse of discretion. Holmgren v. State Farm Mut. Auto Ins., 976 F.2d 573, 581 (9th Cir.1992).
 
 
 25
 Upon review, Fodor appears to have had a colorable claim that he denied the authenticity of some of the banking documents in good faith, based on the opinion of his expert, Dr. Crown. Because the district court did not make any findings to support its conclusion of bad faith, we must vacate the award and remand for reconsideration. "In order to facilitate appellate review, the district court must clearly articulate sound reasons in support of its fee award." Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 622 (9th Cir.1993). As in Intel, the district court in this case "merely awarded the fees without elaboration. Such a procedure is inadequate." Id.
 
 
 26
 Moreover, we remand the attorney's fees award for reconsideration of the amount awarded. "Although the district court has wide discretion to fix the amount of a Rule 37 award" on remand, "the rule provides that such an award must be 'reasonable.' " Holmgren, 976 F.2d at 581. The attorney's fees awarded under Rule 37 must be related to proving the authenticity of documents.
 
 
 27
 JUDGMENT AFFIRMED (No. 92-56169); ATTORNEY'S FEES AWARD VACATED AND REMANDED FOR RECONSIDERATION (No. 92-56454). EACH PARTY SHALL BEAR ITS OWN COSTS ON APPEAL.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Warner did not dispute for purposes of the summary judgment motion that Fodor owns a valid copyright on the screenplay Stealth. Indeed, a copyright registration certificate creates a prima facie presumption that the copyright is valid. see Nimmer on Copyright, Sec. 12.11[B], at 12-161 (1993)
 
 
 [2]
 Fodor claims that a check dated January 14, 1988, in the amount of $63,694.06, has altered dates of deposit. The deposit slip bears the handwritten deposit date of "1/20/88," as does the mechanical notation on the slip from the bank machine. On the back of the check and deposit slip, however, there is a "Pay Any Bank" stamp dated January 19, 1988, which is affixed after deposit. Fodor thus claims the date of deposit must have been altered because it is impossible that the check could have been cleared the day before deposit
 Fodor also points to a Certificate of Deposit issued to Anderson and his wife, dated April 28, 1987 with a maturity date of May 29, 1987. The CD is stamped "Paid May 29, 1986." Fodor also claims that a second CD for $24,000 stamped "June 30" was altered by hand to date "June 29" and then marked "Paid" in handwriting.
 
 
 [3]
 A district court's grant of summary judgment is reviewed de novo. Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir.), cert. denied 484 U.S. 954 (1987)